103 F.3d 141
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Guadalupe Antonio CUEVAS-OLIVAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruben PERALES-GONZALEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco VELAZQUEZ-CONTRERAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fidel GUILLEN-PAYAN, Defendant-Appellant.
 Nos. 96-50030, 96-50031, 96-50059 and 96-50094.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1996.*
Decided Nov. 19, 1996.
 
 1
 Before: BROWNING, THOMPSON, and THOMAS, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 The parties are familiar with the facts and the issues and we will not restate them.
 
 I.
 
 4
 The defendants' due process rights were not violated by the Government's failure to take photographs of the shoe prints found near the marijuana.
 
 
 5
 When the Government fails "to preserve evidentiary materials of which no more can be said than that [they] could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show bad faith on the part of the police to establish a denial of due process. Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988). Bad faith is shown where "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." Id. at 58.
 
 
 6
 The defendants have not made the requisite showing of bad faith. They allege only that Agent Stanley "failed to take any photographs or preserve the shoe prints in any way, even though he had access to a camera and could have taken the photographs if he chose to"; that he "understood that the failure to preserve this evidence would lead to its inevitable destruction"; and that he "knew that the evidence he was failing to preserve had significant evidentiary value." Cf. Youngblood, 488 U.S. at 58 (failure of police to refrigerate clothing and to perform test on semen samples was at worst negligent and did not constitute bad faith); People v. Muna, 999 F.2d 397, 400 (9th Cir.1993) (mere failure of police to produce tape recording of interrogation or filler photographs used in allegedly suggestive photographic lineup did not constitute bad faith).
 
 II.
 
 7
 The district court did not err in admitting evidence obtained after the defendants were detained. The Border Patrol agents had reasonable suspicion of criminal activity.
 
 
 8
 The circumstances establishing reasonable suspicion to detain Guillen and Velazquez include: the fact that only two of the twelve suspects had been arrested; the tripping of the motion sensor near the border; the tired and dirty appearance of the defendants; their location in a remote area six or seven hours after the contraband was discovered; the footprints tracked by Agent Stanley southward toward the border; and Agent Wah's spotting of the three individuals running toward the border when his helicopter approached.[1]
 
 
 9
 In addition to disputing the existence of reasonable suspicion, the defendants also argue that the fact the arrests may have taken place in Mexico "eliminates Agent Stanley's sole proffered reason for the initial detention and arrest": illegal entry into the United States. Even if the defendants had actually reached Mexico when they were arrested, however, that fact would have no bearing on the reasonable suspicion that the defendants were engaged in illegal activity.
 
 III.
 
 10
 The district court properly admitted Guillen and Velazquez's statements made while walking to the transport vehicle. The defendants were in custody, but Agent Stanley was not interrogating them.
 
 
 11
 "Interrogation" under Miranda "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Agent Stanley's remark did not constitute interrogation and was not "reasonably likely to elicit an incriminating response." The remark was merely a comment on the group's present situation, and unlike the statements in Innis, did not directly concern the crime for which the arrests were made.
 
 IV.
 
 12
 The defendants' Confrontation Clause rights were not violated when the trial court precluded them from cross-examining Agent Stanley and Agent Wah on the location of their arrests.
 
 
 13
 The jury had a full opportunity to appraise the biases and motives of the witnesses. Agents Stanley and Wah were subject to wide-ranging cross-examination at trial. Counsel for Guillen tested Stanley's bias. See 10/11/95 RT at 149-50. And counsel for Velazquez tested Wah's credibility by probing alleged inconsistencies. See 10/12/95 RT at 221-22. Moreover, whether the arrest took place in the United States or Mexico was not relevant to any issue in the case.
 
 V.
 
 14
 Inclusion of the "aiding and abetting" language on the verdict forms was not plain error. This is not a case in which an aiding and abetting theory was argued and incomplete instructions were then given to the jury. The indictment charged the defendants with knowing and intentional possession, the Government argued for liability only under a principal theory, and the court correctly instructed the jury as to the essential elements under that theory. The inclusion of "aiding and abetting" language in the verdict forms was a clerical error that did not prejudice the defendants. The failure of the court to offer an instruction under an aiding and abetting theory may even have benefited the defendants by eliminating an alternative (and less stringent) means of conviction. Cf. McGriff v. United States, 408 F.2d 333, 334 (9th Cir.1969) (court's omission of words "conceal and retain" when reading indictment to jury, where defendants could be found guilty if they received, concealed, or retained stolen goods, was prejudicial to Government, not defendants). Moreover, the aiding and abetting language did not affect the defendants' sentences.
 
 VI.
 
 15
 The evidence was sufficient to support the finding that the defendants knowingly possessed the marijuana found by the Border Patrol.
 
 
 16
 While the circumstantial evidence against the defendants in this case is not as strong as in United States v. Mayes, 524 F.2d 803 (9th Cir.1975), it is nevertheless sufficient to support the convictions. Unlike Mayes, no marijuana was found on the defendants, and their story was not implausible. However, unlike the defendant in United States v. Jose Luis L., 978 F.2d 543 (9th Cir.1992), who admitted to entering the U.S. illegally to seek work and who was traveling north, the defendants here did not offer a plausible explanation for their suspicious presence and movements. The defendants were traveling along the same route taken by the group that had brought in the marijuana, a route used recently by other smugglers and used infrequently by illegal aliens. The agents had observed a large group of individuals carrying what the agents suspected to be bundles of marijuana and had followed the footprints found after the bundles had been dropped and the smugglers had fled. Furthermore, in contrast to both Mayes and Jose Luis L., Guillen and Velazquez made inculpatory statements in the presence of Agent Stanley while walking toward the transport vehicle, and Velazquez later made a post-Miranda confession to a DEA agent. The evidence is clearly sufficient to support the convictions of Guillen and Velazquez. Perales' conviction presents a closer case because he made no inculpatory statements. However, sufficient evidence supported his conviction as well, given the above circumstances and the fact that he, like Guillen and Velazquez, leapt from a hiding place and ran toward the border when Agent Wah's helicopter approached.
 
 VII.
 
 17
 We have no jurisdiction to review the court's one-level downward departure based on aberrant behavior in sentencing Cuevas-Olivas. A defendant may not challenge the extent of a downward departure on appeal. United States v. Vizcarra-Angulo, 904 F.2d 22, 23 (9th Cir.1990); see also United States v. Morales, 898 F.2d 99, 102 (9th Cir.1990) (holding that Congress gave courts no jurisdiction to review defendants' appeals of discretionary downward departures).
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The defendants contend, incorrectly, that the government now relies on several facts not before the district court at the evidentiary hearing, including: the tripping of the motion sensor; the defendants' appearance; and their location. The record reflects, however, that the court was aware of these facts when it made its ruling. In any case, the reasonable suspicion determination focuses on what circumstances were known to, or reasonably believed by, the agents at the time of the detention, not necessarily what facts were before the district court